IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 08-00128-01-CR-W-NKL |
| SHAWN MEMARIAN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**TO ACCEPT DEFENDANT'S GUILTY PLEA**

On January 7, 2009, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that defendant's plea was voluntary and therefore recommend that it be accepted.

*I. BACKGROUND*

On May 8, 2008, an indictment was returned charging defendant with one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B)(i). Judge Laughrey referred this case to me for conducting a change-of-plea hearing and issuing a report and recommendation on whether to accept the plea. The hearing was held on January 7, 2009. Defendant was present, represented by Brian Gaddy. The government was represented by Assistant United States Attorney John Cowles. The proceedings were recorded and a transcript of the hearing was filed on January 8, 2009.

## II. AUTHORITY OF THE COURT

The authority of federal Magistrate Judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that Magistrate Judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a Magistrate Judge's "additional duties" when the defendant has consented. United States v. Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991), Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a Magistrate Judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the

2

availability of *de novo* review by a District Judge preserves the structural guarantees of Article III. <u>United States v. Torres</u>, 258 F.3d at 795. Applying the <u>Peretz</u> holding and the reasoning of <u>Williams</u>, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." <u>Id.</u> Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. <u>Id.</u> at 796 (citing <u>United States v. Dees</u>, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. <u>Id.</u> "Consent is the key." <u>Id.</u> (quoting <u>United States v. Williams</u>, 23 F.3d at 633).

The <u>Torres</u> court also addressed the implications of such a delegation for Article III's case and controversy clause. <u>Id.</u> Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a Magistrate Judge. <u>Id.</u> Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the Magistrate Judge's role. <u>Id.</u>

3

Based on the above, I find that, with the consent of the defendant, the district court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. On May 8, 2008, an indictment was returned charging defendant with one count of cyberstalking in violation of 18 U.S.C. § 2261A(2)(B)(i). On January 7, 2009, prior to the change-of-plea hearing, defendant waived indictment and an information was filed charging him with cyberstalking (Tr. at 7). Defendant understood the charge in the information (Tr. at 7).

2. The statutory penalty for the charged violation is not more than five years in prison, a fine of up to $250,000, a supervised release term of not more than three years, a mandatory $100 special assessment, possible restitution (Tr. at 7-8).

3. Defendant was advised of the following:

> a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 8);
>
> b. That he has the right to assistance of counsel throughout the trial (Tr. at 8-9);
>
> c. That defendant is presumed innocent, and the government has the burden of coming forward to prove

4

defendant's guilt beyond a reasonable doubt (Tr. at 9);

    d. That defendant's attorney would have the opportunity to cross examine the government witnesses (Tr. at 9);

    e. That defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that defendant may not testify at trial (Tr. at 10);

    f. That defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 10); and

4. Defendant was informed and understood that by pleading guilty, he is giving up all of the rights described above (Tr. at 11).

5. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 11). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 11). Defendant stated that he understood (Tr. at 11).

6. Defense counsel stated that this was an open-file case and he reviewed the government's file (Tr. at 12). Government counsel stated that its evidence would show that:

> on or about July the 15th, 2006, [the victim] had become acquainted with the defendant . . . Shawn D. Memarian, who was a civilian contractor of the Fort Leavenworth Army base in Fort Leavenworth, Kansas. She would have testified that

5

she resides in the state of Missouri and also at the time
was employed in the state of Missouri. She would testify
that she and Mr. Memarian had gone on a few dates after
having connected on the Internet. And that when she
attempted to break off the relationship or the short dating
period, that she began receiving troubling e-mails from Mr.
Memarian who wanted to continue the relationship with Ms.
Sanford. The e-mail communications from Mr. Memarian, many
of them were sent from his work computer in the state of
Kansas to Ms. Sanford in the state of Missouri. As time went
by those emails became more and more threatening. Ms.
Sanford reported the matter to police, who contacted Mr.
Memarian and asked him to stop. The content of the e-mails,
as set out in the plea agreement, but to summarize, they
made threats of bodily harm to Ms. Sanford. It also included
indirect communications to Ms. Sanford where he would -- Mr.
Memarian would make postings to Internet websites, such as
MySpace, Facebook, Craig's List, in which he would make it
look as if it was Ms. Sanford making the postings and
actually it was Mr. Memarian. The postings, in effect, would
invite whoever was reviewing the postings on the Internet to
go to Ms. Sanford's address in Missouri where she lived
alone. Ms. Sanford was single at the time. And Ms. Sanford
did, in fact, have men knocking on her door all hours of the
day thinking that they were there to have sex with her. And,
of course, she reported that situation to the police as
well. This went for a period of time. The evidence at trial
would have been that in the course of the investigation, the
Army was contacted by FBI agents and arrangements were made
to make a mirror copy of the hard drive of Mr. Memarian's
computer at the Army base. We accomplished that and reviewed
the evidence from his hard drive which showed remnants of
the e-mails that had been sent to Ms. Sanford. Many of these
e-mails were sent in other personas such as Heather Otto and
Matt Romero. And we were able to establish that on that hard
drive at the Army base, Mr. Memarian's hard drive contained
remnants of those fictitious personas. And the evidence
would have been that once Mr. Memarian was arrested in April
of 2008, and brought into federal custody he was allowed a
bond. The evidence would have been that since his arrest,
there was no more communications of any sort that I've
described here to Ms. Sanford (Tr. at 13-14).

7. Defense counsel agreed that his review of the evidence

and his independent investigation confirmed that the facts were

6

Case 4:08-cr-00128-NKL   Document 32   Filed 01/09/09   Page 6 of 9

as alleged by the government and that it is in the defendant's best interest to plead guilty (Tr. at 12, 15, 26).

8. Defendant was placed under oath (Tr. at 15) and admitted the following: Between July 15, 2006, and September 6, 2006, defendant had a relationship with Melissa Sanford. After their breakup, he took the actions described by the prosecutor in order to cause Ms. Sanford to fear for her life. In doing so, he used a computer to make postings on websites which resulted in the threats traveling interstate (Tr. at 15-17).

9. Defendant is familiar with the plea agreement, discussed it with his attorney, and understands it (Tr. at 18-24). In addition, I went over the plea agreement with defendant during the change-of-plea hearing (Tr. at 19-24).

10. No one has made any threats or promises in order to get defendant to plead guilty (Tr. at 18).

11. Defendant is satisfied with the advice and guidance he has received from Mr. Gaddy (Tr. at 24). There is nothing Mr. Gaddy has done that defendant did not want him to do, and there is nothing he wanted Mr. Gaddy to do that Mr. Gaddy has not done (Tr. at 24-25).

12. Defendant is 29 years of age and has a bachelor's degree (Tr. at 25). He can read, write, and understand English (Tr. at 25). He was not under the influence of any alcohol or drug that would affect his ability to make an intelligent choice about pleading guilty during the change-of-plea hearing (Tr. at

25).

13. Defendant tendered a plea of guilty to the crime charged in this information (Tr. at 26).

## IV. ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for cyberstalking are:

(1) The defendant, having the intent to place a person in reasonable fear of death or serious bodily injury,

(2) used an interactive computer service or a facility of interstate commerce,

(3) to engage in a course of conduct,

(4) against the person in another state,

(5) which caused substantial emotional distress to the person or placed that person in reasonable fear of death or serious bodily injury.

18 U.S.C. § 2261A(2)(B)(i); United States v. Bell, 303 F.3d 1187 (9th Cir. 2002).

## V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a Magistrate Judge for issuance of a report and recommendation on whether defendant's guilty plea should be accepted.

2. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crime charged in this information.

8

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting defendant's guilty plea and adjudging defendant guilty of the offense charged.

                                        */s/ Robert E. Larsen*
                                        ROBERT E. LARSEN
                                        United States Magistrate Judge

Kansas City, Missouri
January 9, 2009